Filed 10/26/20  P. v. Rizkallah CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WINTHROP RIZKALLAH,<br><br>    Defendant and Appellant. | A158341<br><br>(Solano County<br>Super. Ct. No. FCR337300) |

Winthrop Rizkallah appeals from a sentencing order issued after he violated his probation.  He contends the court erred in imposing a probation condition that he abstain from the use of alcohol and illegal drugs and submit to alcohol and drug testing at the request of law enforcement.  We will strike the probation condition to the extent it requires Rizkallah to abstain from alcohol and submit to alcohol testing, and affirm the order in all other respects.

## I.  FACTS AND PROCEDURAL HISTORY

After charges were first brought against Rizkallah (by a complaint that is not included in the record), the court declared a doubt as to his competence and appointed a doctor to evaluate him pursuant to Penal Code section 1369.[1]  The competency evaluation advised that Rizkallah was diagnosed with

---

[1]    All statutory references hereafter are to the Penal Code.

1

"Schizophrenic Spectrum Psychiatric Disorder" and met "the differential diagnostic criteria of possessing a Delusional Disorder [and] exhibit[ed] pathological stalking behaviors." Rizkallah reported "experiencing auditory hallucinations, lapses of memory, impairments in his concentration and focus, and exhibit[ed] limited insight and impaired judgment." In May 2017, the court found Rizkallah incompetent to stand trial and in June 2017 committed him to the Department of State Hospitals. In August 2017, Rizkallah was found to have regained competence.

In September 2017, the Contra Costa County District Attorney filed an amended complaint charging Rizkallah with felony stalking (§ 646.9, subd. (b)), misdemeanor stalking (§ 646.9, subd. (a)), and misdemeanor violation of a protective order (§ 273.6, subd. (a)).

Pursuant to a "Plea Agreement With Probation Terms," Rizkallah pleaded guilty to the charges and an additional misdemeanor count of violating a protective order. In September 2017, the court suspended execution of sentence, placed Rizkallah on formal probation for five years, ordered him to serve 364 days in jail, and issued a protective order prohibiting him from contacting his victim for 10 years.

In March 2018, the Contra Costa County District Attorney charged Rizkallah with felony stalking (§ 646.9, subd. (b)), felony violating a protective order (§ 273.6, subd. (d)), felony contempt of court (§ 166, subd. (c)), and eight misdemeanor counts of violating a protective order (§ 166, subd. (c)(1)).

As described in a subsequent probation department report, these 2018 charges were based on Rizkallah continuing to stalk the victim who had been the object of his earlier pursuits. In February 2018, the victim received at her workplace seven multi-page letters from Rizkallah, professing his love,

2

devotion, and desire to marry her, followed by flowers, balloons, chocolates, and a stuffed animal, as well as an Instagram message stating, " 'I love you.' " The victim and Rizkallah had no prior relationship, and she had restraining orders in place against him since 2012. Rizkallah was arrested for violating the restraining orders and admitted sending the letters, gifts, and message. He disclosed multiple ways he would seek out the victim, including using his phone and computers. He understood his contact with the victim was unwanted and in violation of the restraining orders, but he contacted her anyway because he felt it was good to do and believed it would make her happy, and he would continue to do so.

In April 2019, Rizkallah was convicted of contempt of court and violating a protective order, both misdemeanors.

Meanwhile, Rizkallah's Contra Costa County probation had been transferred to Solano County, so in June 2018 Rizkallah was charged in Solano County with violating his probation based on the misdemeanor charges. In May 2019, the court found Rizkallah had violated his probation and continued the matter for sentencing.

In a report filed in May 2019, the Solano County Probation Department noted that Rizkallah "reported sporadic consumption of alcohol and denied illegal drug use during the period prior to his incarceration," "recalled being diagnosed with schizophrenia approximately four years ago," and "indicated he has been taking medication since that time and is presently prescribed Abilify." Despite taking Abilify, Rizkallah still experienced auditory and visual hallucinations on a regular basis.

The probation department recommended that, as an additional condition of probation, Rizkallah be "ordered to abstain from alcohol and illegal drugs, and . . . submit to alcohol and/or drug testing as directed." The

3

probation report did not state that Rizkallah abused alcohol, that his stalking behavior occurred after he consumed alcohol, or that alcohol use would limit or neutralize the effectiveness of Abilify; nor did it offer any other justification for the imposition of the probation condition.

At Rizkallah's sentencing hearing on July 29, 2019, defense counsel objected to the probation department's recommendation regarding alcohol use and testing: "There is no indication that alcohol was involved in this case at all. I think Mr. Rizkallah told [his probation officer] that he drank alcohol once or twice in his life, didn't like it. And important for him he knows that when he's taking his prescribed medication alcohol is not something helpful to him. It's something I talked to him about and I know his father talked to him about a lot. I don't think it needs to be a term of probation."

This prompted the following discussion between the trial court and defense counsel: "THE COURT: Well, if it's contraindicated by the ingestion of the psychotropic medication he's required, why wouldn't I order that? [¶] [DEFENSE COUNSEL]: I guess you can order him to take the medication as prescribed. [¶] THE COURT: Why would you allow him to potentially consume alcohol and it conflict with his psychotropic medication? [¶] [DEFENSE COUNSEL]: I understand your point, Your Honor. Mr. Rizkallah doesn't have an issue with that. As his advocate— [¶] THE COURT: You have an issue? [¶] [DEFENSE COUNSEL]: Not that I do. I'm trying to make sure there is a nexus between the conduct sustained at the violation hearing and the terms of his probation. [¶] THE COURT: Understood, but the nexus could be established in a number of ways. It's not just between the crime and the defendant. Anyway. Go ahead. Sorry I interrupted you. Once you told me it is contraindicated by the psychotropic

4

medication, it didn't seem like a reasonable request that I not impose it. [¶] [DEFENSE COUNSEL]: Understood."

The court revoked Rizkallah's probation, sentenced him to three years in state prison, suspended the sentence, and reinstated his probation on the same terms and conditions (which included the condition that Rizkallah "[t]ake all prescribed medications"), along with additional conditions that, inter alia, he "totally abstain from [the] use of alcohol [and] illegal drugs, [and] submit to alcohol[,] drug testing at any time requested by any peace officer[,] probation officer [or] program rep[resentative.]"

This appeal followed.

## II.  DISCUSSION

Rizkallah challenges the probation condition requiring him to abstain from using alcohol and to submit to alcohol and drug testing, because the condition is unrelated to his crimes and the prevention of future criminality. We address an issue of waiver and the merits.

### A.  Waiver

Respondent contends Rizkallah waived his right to challenge the probation condition on appeal, because his plea agreement stated that he "waive[d] all appellate rights," included probation conditions as a component of the agreement, and dictated that Rizkallah would "accept and follow the standard terms and conditions of probation which will be set forth by the court at the time of plea and sentencing."  Respondent urges that courts have recognized conditions concerning alcohol testing and usage as "standard." (Citing *In re Todd L.* (1980) 113 Cal.App.3d 14, 17 ["The probation officer recommended suitable placement with several standard conditions of probation regarding alcohol, narcotics, and psychiatric or psychological testing"].)

5

The record does not demonstrate a waiver.  Rizkallah may have waived appellate rights as to his plea agreement and the sentence set forth in that agreement, and agreed to "accept and follow the standard terms and conditions of probation *which will be set forth by the court at the time of plea and sentencing.*" (Italics added, bolding and underlining removed.)  But the probation condition that is the subject of this action was not imposed at the time of his plea and sentencing.  Instead, it was imposed years later when he was resentenced after his probation violation.  There is no indication that Rizkallah intended to waive all errors occurring untold years into the future.  As respondent acknowledges, a general waiver of appeal rights does not apply to possible future error outside the defendant's contemplation at the time. (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815.)

B.  Merits

Under section 1203.1, subdivision (j), the trial court may impose reasonable probation conditions "as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer."

"A condition of probation will not be held invalid unless it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, *and* (3) requires or forbids conduct which is not reasonably related to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486, italics added.)  In other words, "even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is

6

valid as long as the condition is reasonably related to preventing future criminality." (*People v. Olguin* (2008) 45 Cal.4th 375, 380.)

The parties agree that alcohol use was not the direct cause of Rizkallah's crimes and is not itself illegal. They differ solely on the third *Lent* factor: whether abstention from alcohol is reasonably related to future criminality under the circumstances of this case.

A reasonable relationship entails a "degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1122.) "There must be some rational factual basis for projecting the possibility that defendant may commit a particular type of crime in the future, in order for such projection to serve as a basis for a particular condition of probation." (*In re Martinez* (1978) 86 Cal.App.3d 577, 583.) We review for an abuse of discretion. (*In re Ricardo P., supra*, at p. 1118.)

At the outset, we note that this case does not involve circumstances in which alcohol-abstention probation conditions have previously been upheld, as where the defendant had an alcohol or drug-related conviction (e.g., *People v. Beal* (1997) 60 Cal.App.4th 84, 86–87; *People v. Lindsay* (1992) 10 Cal.App.4th 1642, 1644–1645), committed a crime while under the influence (*People v. Balestra* (1999) 76 Cal.App.4th 57, 66–69), or had a history of drug or alcohol abuse (*People v. Moret* (2009) 180 Cal.App.4th 839, 842).

Instead, the court imposed the probation condition under the theory that Rizkallah's consumption of alcohol was contraindicated for his medication (Abilify). Respondent argues that alcohol use would therefore limit or negate the medication's effectiveness and lead to future criminality. While such facts might demonstrate the requisite reasonable relationship in

7

the appropriate case—an issue we do not reach here—in this case those facts are not supported by the record.

The record contains no evidence that alcohol use and Abilify are contraindicated to the extent that Abilify's benefits would be compromised if Rizkallah consumed alcohol. Contrary to the court's statement, defense counsel did not say (at least on the record) that alcohol use was "contraindicated by the psychotropic medication." Rather, defense counsel said that "when he's taking his prescribed medication[,] alcohol is *not something helpful to him*." (Italics added.) That can mean a variety of things—including that alcohol exacerbates the side-effects of the drug or makes him feel ill—but it does not specifically mean that alcohol interferes with the drug's effectiveness. Nor is there evidence that alcohol use has led Rizkallah not to take his medication.

Nor was there any other evidence that alcohol consumption would increase the likelihood that Rizkallah would commit crimes. Rizkallah consumed alcohol only sporadically, and there was no stated link between his alcohol consumption and his behavior. Rizkallah had not been consuming alcohol when he stalked his victim, either during the commission of his initial offenses or when he violated his probation. There was no evidence that alcohol use had ever led Rizkallah to consume illegal drugs or perpetrate any crime.

The People speculate that a reduction in the effectiveness of Rizkallah's medication "could lead to a resumption of the obsessive and delusional thinking that led appellant to stalk and harass his victim for over six years." But the record shows that Rizkallah stalked and harassed the victim in spite of the fact that he was taking his medication and had not been drinking. According to the probation officer's representation to the court at the hearing,

Rizkallah was "medicated and engaged with mental health" when he committed the new offenses. If Abilify was ineffective to control Rizkallah's delusions and inhibit him from stalking his victim, it appears to be because of the shortcomings in the medication or dosage, whether he consumed alcohol or not.

The People's reliance on *People v. Cota* (2020) 45 Cal.App.5th 786 is misplaced. There, an alcohol-related probation condition was upheld because, due to the nexus between alcohol and drugs, the condition was reasonably related to the defendant's future criminality given his past drug convictions and admitted history of illegal methamphetamine and marijuana use. (*Id.* at p. 792.) Here, Rizkallah did not have a history of illegal drug use, so there was no nexus between illegal drug use and Rizkallah's consumption of alcohol.

We understand the court's desire to impose probation conditions that would help to cease Rizkallah's stalking of a frightened victim. But based on *the record*, the court abused its discretion in requiring Rizkallah, as a condition of his probation, to abstain from alcohol and submit to alcohol testing. To that extent, we will order the probation condition stricken. Rizkallah fails to establish, however, that the trial court erred in requiring Rizkallah to abstain from illegal drugs (an illegal activity) and submit to drug testing (a reasonable means of detecting a violation).

## III. DISPOSITION

The probation conditions in the sentencing order of July 29, 2019 are stricken solely to the extent they require Rizkallah to abstain from alcohol and submit to alcohol testing. The order is otherwise affirmed.

9

NEEDHAM, Acting P.J.

We concur.

BURNS, J.

REARDON, J. *

*People v. Rizkallah* / A158341

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10